IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| S FARMS and SINGLETON FARMS,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED GRAIN CORPORATION OF OREGON, an Oregon Domestic Business Corporation,<br><br>Defendant. | CV 18-51-BLG- TJC<br><br>**ORDER** |

Plaintiffs S Farms and Singleton Farms ("Singleton") bring this action against Defendant United Grain Corporation of Oregon ("United"). In their complaint, Singleton sets forth nine counts against United relating to the parties' agreements for the delivery and sale of wheat. (Doc. 1-2.)

Presently before the Court is United's Motion to Stay and Compel Arbitration. (Doc. 2.) The motion is fully briefed and ripe for the Court's review. (Docs. 3, 5, 6.) The Court held a hearing on the motion on November 14, 2018. Having considered the parties' submissions, and the parties' oral arguments, the Court **ORDERS** that United's Motion to Stay and Compel Arbitration is **DENIED**.

/ / /

/ / /

1

## I. BACKGROUND

This dispute arises from multiple transactions between the parties involving the delivery and sale of grain. (Doc. 3 at 2; Doc. 5-1 at 3.) Singleton is a spring and winter wheat producer in Custer County, Montana. Between 2007 and 2017 Singleton delivered over one million bushels of wheat to United at one of its grain elevators in Pompeys Pillar, Montana. (Doc. 5-1 at 3.) The grain was delivered under delayed pricing agreements, whereby title to the grain would pass to United upon delivery, but the purchase price would be determined according to future market rates. (Doc. 6-3 at 2-3.) The present dispute involves grain deliveries between 2007 and December 13, 2015. (Doc. 1-2 at 7.)

The parties disagree as to how the terms of their transactions were established. According to United, it has a regular procedure for the development of delayed pricing agreements. After a producer delivers grain to one of its facilities, the elevator generates a contract that records the terms of the pricing agreement for that transaction. (Doc. 6-1 at 2.) United's policy is to then send two copies of the agreement to the producer, one for the producer's records and a second to be signed and returned to United. (Doc. 6-1 at 2-3.)

Prior to 2015, United's written pricing agreements were created by hand on preprinted, fill-in-the-blank forms. (Doc. 6-1 at 3.) The pre-2015 agreements made no mention of arbitration, or the application of National Grain and Feed

2

Association ("N.G.F.A.") rules.  In 2015, United began using a new computer-generated contract.  (Doc. 6-1 at 3.)  The new contracts contained a notation on the front of the agreement which stated: "RULES TO GOVERN: N.G.F.A. Trade & Arbitration."  (*See e.g.*, Doc. 3-3 at 1.)  United filed several post-2015 agreements with Singleton as an exhibit to its opening brief.  (Doc. 3-3.)  Four of the contracts are dated prior to December 13, 2015; two appear to be signed by a representative of Singleton (doc. 3-3 at 2, 3), and two are unsigned (doc. 3-3 at 1, 10).

Singleton disputes that United's written contracts control the parties' agreements.  According to Singleton, the terms of the transactions were set according to oral agreements entered into by the parties at the time Singleton delivered its grain to the Pompeys Pillar facility.  (Doc. 1-2 at 3.)  Singleton acknowledges that United sent written documents to Singleton after the delivery of grain.  (Doc. 1-2 at 5; 5-1 at 4.)  But Singleton contends United represented that the documents were solely for auditing purposes with the state, and United assured Singleton that their oral agreements would control their course of dealing.  (Doc. 1-2 at 5; 5-1 at 4.)

It appears a dispute arose between the parties regarding the pricing agreements in 2017.  In August 2017 and February 2018, United "priced" all the bushels of grain delivered by Singleton on or before December 13, 2015, and sent Singleton proceeds from the transactions.  (Doc. 1-2 at 7; Doc. 3 at 3.)  Singleton

3

contends United priced the grain contrary to its instructions, and improperly calculated the sales price and fees under the parties' agreements. *Id.*

Singleton initiated this action in Montana state court on December 28, 2017. (Doc. 1-2.) Singleton asserts nine causes of action: (1) reformation of contract; (2) declaratory judgment; (3) breach of contract; (4) fraud; (5) constructive fraud; (6) negligent misrepresentation; (7) breach of covenant of good faith and fair dealing; (8) unjust enrichment; and (9) violation of the Commodity Dealer Act. *Id.* On March 12, 2018, United timely removed, alleging this Court has diversity jurisdiction under 28 U.S.C. §1332(a). (Doc. 1.) United now moves the Court to stay the pending action and compel arbitration of the parties' dispute. (Docs. 2, 3.)

## II. DISCUSSION

### A. Legal Standard

#### a. Federal Arbitration Act

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving interstate commerce. The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. Because the pricing agreements here were made between Montana and Oregon entities and involve interstate commerce, the FAA governs.

The FAA declares a national policy favoring arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). It places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Nevertheless, "[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986). Therefore, when one party disputes "the making of the arbitration agreement," the FAA requires the court to hear and decide the issue before compelling arbitration. 9 U.S.C. § 4; *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) ("Issues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration." (Emphasis in original).

When considering whether to compel arbitration, courts are "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho*
5

*Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

### b. Summary Judgment Standard

A court reviews a motion to compel by applying the summary judgment standard of Federal Rule of Civil Procedure 56(a). *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016); *Coup v. Scottsdale Plaza Resort, LLC*, 823 F.Supp.2d 931, 939 (D. Ariz. 2011). "Only when there are no genuine issues of material fact concerning the formation of an arbitration agreement should a court decide as a matter of law that the parties did or did not enter into such an agreement." *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 804 (N.D. Cal. 2004) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991). "If there is doubt as to whether such an agreement exists, the matter . . . should be submitted to a jury." *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3rd Cir. 1980). *See also*, *Great Earth Companies, Inc. v. Simmons,* 288 F.3d 878, 889 (6th Cir. 2002) ("If the validity of the agreement to arbitrate is 'in issue,' the court must proceed to trial to resolve the question."); *Howard v. Ferrellgas Partners*, 748 F.3d 975, 978 (10th Cir. 2014) (court should proceed expeditiously

to a summary trial unless "it's apparent from a quick look at the case that no material disputes of fact exist"). In addition, the "party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise. *Kaneff v. Del.Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009).

B.     **United's Motion to Compel**

In determining whether a valid arbitration agreement exists, courts "should apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc., v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002.) In Montana, the essential elements of a contract are (1) identifiable parties capable of contracting; (2) consent of the parties; (3) a lawful object; and (4) consideration. *Tedesco v. Home Savings Bancorp, Inc.*, 398 Mont. 468, 475 (2017); Mont. Code Ann. § 28-2-102. The party attempting to prove the existence of a contract must establish each of the essential elements. *Chipman v. Northwest Healthcare Corp.*, 317 P.3d 182, 185 (Mont. 2014.) If the parties did not mutually assent to the terms of a contract, those terms are invalid and unenforceable against the non-assenting party. *Lenz v. FSC Securities Corp.*, 414 P.3d 1262, 1271 (Mont. 2018.)

United advances two arguments to establish the existence of an agreement to arbitrate. United first argues that all post-2015 agreements which contain the reference to N.G.F.A. rules and arbitration are subject to arbitration. It further

to a summary trial unless "it's apparent from a quick look at the case that no material disputes of fact exist"). In addition, the "party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise. *Kaneff v. Del.Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009).

B.     **United's Motion to Compel**

In determining whether a valid arbitration agreement exists, courts "should apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc., v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002.) In Montana, the essential elements of a contract are (1) identifiable parties capable of contracting; (2) consent of the parties; (3) a lawful object; and (4) consideration. *Tedesco v. Home Savings Bancorp, Inc.*, 398 Mont. 468, 475 (2017); Mont. Code Ann. § 28-2-102. The party attempting to prove the existence of a contract must establish each of the essential elements. *Chipman v. Northwest Healthcare Corp.*, 317 P.3d 182, 185 (Mont. 2014.) If the parties did not mutually assent to the terms of a contract, those terms are invalid and unenforceable against the non-assenting party. *Lenz v. FSC Securities Corp.*, 414 P.3d 1262, 1271 (Mont. 2018.)

United advances two arguments to establish the existence of an agreement to arbitrate. United first argues that all post-2015 agreements which contain the reference to N.G.F.A. rules and arbitration are subject to arbitration. It further

to a summary trial unless "it's apparent from a quick look at the case that no material disputes of fact exist"). In addition, the "party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise. *Kaneff v. Del.Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009).

B.     **United's Motion to Compel**

In determining whether a valid arbitration agreement exists, courts "should apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc., v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002.) In Montana, the essential elements of a contract are (1) identifiable parties capable of contracting; (2) consent of the parties; (3) a lawful object; and (4) consideration. *Tedesco v. Home Savings Bancorp, Inc.*, 398 Mont. 468, 475 (2017); Mont. Code Ann. § 28-2-102. The party attempting to prove the existence of a contract must establish each of the essential elements. *Chipman v. Northwest Healthcare Corp.*, 317 P.3d 182, 185 (Mont. 2014.) If the parties did not mutually assent to the terms of a contract, those terms are invalid and unenforceable against the non-assenting party. *Lenz v. FSC Securities Corp.*, 414 P.3d 1262, 1271 (Mont. 2018.)

United advances two arguments to establish the existence of an agreement to arbitrate. United first argues that all post-2015 agreements which contain the reference to N.G.F.A. rules and arbitration are subject to arbitration. It further

maintains, however, that all of the parties' transactions between 2007 and 2017 are subject to arbitration based on trade usage and the parties' course of dealing.

With respect to the post-2015 transactions, United did submit several of its post-2015 agreements as an exhibit to its opening brief in support of its motion. (Doc. 3-3.) Some of those agreements are referred to as delayed pricing contracts (*see e.g.* doc. 3-3 at 6), while others purport to confirm United's previous purchase of grain from Singleton (*see e.g.*, doc. 3-3 at 1). Nevertheless, a proper foundation has not been established for the consideration of any of these agreements under a summary judgment standard.

The Court may only consider admissible evidence in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(e). Accordingly, the Ninth Circuit has repeatedly held that a court may not consider unauthenticated documents in a motion for summary judgment. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). Authentication is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* (quoting Fed. R. Evid. 901(a).) Therefore, to support summary judgment, documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id* (quoting *Canada v. Blains's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987).

In its motion and supporting pleadings, United did not establish the authenticity and admissibility of any of the post-2015 agreements by a declaration from anyone with personal knowledge. It simply attached a stack of purported agreements as an exhibit to its brief. Some of the agreements appear to be signed by a representative of Singleton, and some are not. There is no verification as to when and where the agreements were entered into and by whom. There is no confirmation these agreements were presented to Singleton. There is also no foundation to establish whether the terms of the post-2015 agreements, including any arbitration provision, were bargained for by the parties, or were entered into with the mutual assent of both parties.

It should be noted that United attempted to remedy this deficiency by attaching the affidavits of United representatives Brian Wixom and James Wu to its reply brief. (Docs. 6-1, 6-3.) Nevertheless, neither affidavit establishes the authenticity or validity of the agreements. The affidavit of Brian Wixom purports to authenticate a number of Singleton/United agreements between 2008 and 2017. (*See* Docs. 6-1, 6-2.) But Mr. Wixom is not the custodian of those documents; he did not author the documents; he did not witness the execution of the documents; and he does not attest to have any personal knowledge concerning any of United's transactions with Singleton. Aside from a recitation of United's general policies and procedures, Mr. Wixom's affidavit states nothing more than he reviewed the

documents, and "[to] the best of [his] knowledge," they are true and correct copies of United documents, and "appear to be true and correct copies" of delayed pricing contracts between Singleton and United. (Doc. 6-1 at 4.) Therefore, Mr. Wixom's affidavit fails to authenticate the documents purporting to establish the existence of an arbitration agreement between the parties. *See Orr*, 285 F.3d at 777 (finding an individual that did not write, sign, or witness the signing of a document was unable to authenticate it for the court's consideration on a motion for summary judgment.)

United also submitted the affidavit of James Wu with its reply. The affidavit generally explains the operation of United's delayed pricing programs. While Mr. Wu's affidavit provides context regarding pricing agreements in the grain industry, it does not authenticate any of the documents submitted in support of United's motion. It also does nothing to establish the essential elements of a valid arbitration agreement.

United also maintains, however, that all of its transactions with Singleton are subject to arbitration under N.G.F.A. rules, regardless of whether the rules are noted on the agreements. United asserts the N.G.F.A. rules are so well established that they constitute the "usage of trade" in the grain industry, and reflect the course of dealing between the parties. (Doc. 3 at 9.)

Leaving aside the issue of whether an arbitration agreement can be established in these circumstances by usage of trade or course of dealing, United again fails to provide any factual support for its argument. United merely quotes provisions of the N.G.F.A. rules, and states that since it is a member of the N.G.F.A., Singleton had notice N.G.F.A. arbitration applied to its transactions.

The same is true regarding United's course of dealing argument. Apart from quoting Montana's course of dealing statute, United's course of dealing argument is devoid of factual support.

United has also ignored Singleton's principal claim in this case. Singleton brings this action based upon the breach of alleged oral agreements it had with United. Singleton maintains that the terms of its pricing agreements with United were set according to oral contracts established at the time it delivered grain to the Pompeys Pillar facility. It alleges that United represented that the written documents generated after the deliveries were only for auditing purposes, and assured Singleton that their oral agreements would control. In its response to United's motion, Singleton supported this contention with the affidavit of Jerry Singleton, who is "the owner of various interests in S Farms and Singleton Farms." (Doc. 5-1.) In his affidavit, Jerry Singleton attests that the parties entered into oral agreements at the time the grain was delivered. He further states that the parties never discussed arbitration of disputes, and that Singleton did not object to any of

11

the written documents sent to them, because of "reliance upon representations from [United] that the oral agreements and course of dealing would control." (Doc. 5-1 at ¶¶ 11, 13, 14.) United has not addressed Singleton's claims with anyone with personal knowledge of the parties' transactions.

Therefore, viewing the evidence in the light most favorable to Singleton, United has failed to meet its burden to establish the absence of any issue of material fact. The Court is therefore unable to determine as a matter of law whether a valid agreement to arbitrate exists; and if so, whether the agreement encompasses the dispute at issue.

If upon review of a motion to compel a court concludes an issue of material fact exists, "the FAA maintains that the court move summarily to trial." *Nebraska Machinery Co. v. Cargotec Solutions, LLC,* 762 F.3d 737, 743 (8th Cir. 2014.) "If no jury trial be demanded by the party [opposing arbitration] . . . the court shall hear and determine such issue." 9 U.S.C. § 4. Singleton has requested a jury trial on this issue. Therefore, the factual findings regarding any whether there is an agreement to arbitrate the parties' dispute will be made by a jury.

///

///

///

///

## III. CONCLUSION

Based on the foregoing, **IT IS ORDERED** Defendant's Motion to Stay and Compel Arbitration is **DENIED.**

**IT IS ORDERED**.

DATED this 18th day of December, 2018.

                                           _____
                                           TIMOTHY J. CAVAN
                                           United States Magistrate Judge